# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| IN RE: <br><br> **UNITED PLASTIC RECYCLING, INC.,** <br><br> Debtor and Debtor In Possession, | **CASE NO. 15-32928-WRS** <br><br> **Chapter 11** |

**MOTION TO USE CASH COLLATERAL INCIDENT TO EXPENSES INCURRED IN THE NORMAL COURSE OF BUSINESS, TO PAY PREPETITION WAGES AND SALARIES,
AND REQUEST FOR EXPEDITED RELIEF**

COMES NOW the Debtor, United Plastic Recycling, Inc. ("Debtor") and files this motion, pursuant to 11 U.S.C. § 363(c), to use its cash collateral and to request expedited relief, and in support thereof, states the following:

**Procedural Background**

1. On October 16, 2015, Debtor filed a voluntary petition for an order of relief under Chapter 11 of the *United States Bankruptcy Code.*

2. The Debtor continues to operate its business and to manage its estate as debtor-in-possession. No committee, trustee, or examiner has been appointed to date in either case.

3. The Court has jurisdiction over this case and this motion under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2). Venue of this case before this Court is appropriate under 28 U.S.C. §§ 1408 and 1409.

**Factual Background**

4. Debtor is an Alabama corporation organized and existing under the laws of the State of Alabama, with substantially all its assets and facilities in Montgomery, Montgomery County, Alabama. The Debtor's home office is located at 3000 Selma Highway, Montgomery, AL, 36108; also, the debtor leases additional locations.

5. The majority owner of the Debtor, John Sullivan, unexpectedly took his own life and his estate is currently being administered.

6. The Debtor has a line of credit with Renasant Bank ("Senior Secured Lender") totaling $2,785,211.83. It has alleged that this debt has matured and the Senior Secured Lender has given notice of default (correspondence, October 14, 2015).

7. For the factors cited in paragraph six, and for other reasons, the Debtor was forced to seek protection under Chapter 11 of the *United States Bankruptcy Code* to prevent what appears as a threat of imminent seizure by the Senior Secured Lender, and any such a seizure would cause immediate and irreparable damage to the Debtor, specifically to include closure of the business.

8. An affiliate, United Lands, LLC, has also filed a Chapter 11 bankruptcy, and therefore, the filing of the two bankruptcy cases prevents foreclosure; preserves and protects the companies' assets; maximizes the values of its businesses; provides an avenue for the reorganization of the businesses; provides for a centralized forum for the adjudication of various disputes; and ensures the just, equitable, and fair treatment of all creditors.

**Assets and Liabilities**

9. The Debtor anticipates providing a spreadsheet regarding assets and liabilities, budget and a pro forma, at the hearing to consider the use of cash collateral. However, the following provides a summary of the Debtor's operations, assets, and liabilities:

    a. At the filing of the petition for an order of relief, the Debtor employed 165 persons: 156 employees are compensated hourly and 9 employees receive compensation based upon salaries and commissions. The hourly or wage employees are compensated weekly and the salary or commissioned employees are paid bi-weekly. The payroll for hourly or wage employees runs between $80,000.00 and $85,000.00 per pay period and the payroll for commissioned and salaried employees runs at approximately $40,000.00 a pay period.

b. The Debtor is current in all tax payments and wage/salary related obligations. This also includes current status for the payment of Worker's Compensation Insurance.

c. In addition to the wages and salaries, it costs the Debtor approximately $150,000.00 to $200,000.00 per month for overhead expenses, and the overhead expenses include numerous items such as utilities and equipment maintenance.

d. The Debtor pays between $10,000.00 and $30,000.00 a month in general operating expenses and these expenses include telephone and office related expenses.

e. The Debtor has approximately 6,000,000 pounds of inventory which is valued at between $2,500,000.00 and $3,500,000.00. The inventory includes items used in everyday production and also inventory requiring additional processing for use in production.

f. It is believed that the Debtor has approximately $20,000.00 in payroll with Senior Secured Lender. However, this account has been frozen.

g. The Debtor has approximately $250,000.00 in its operating account with the Senior Secured Lender, however this account has likewise been frozen and the balance with vary depending upon the outstanding checks paid and the checks that have been returned.

h. The Debtor has approximately $3,000,000.00 in accounts receivable.

i. The Debtor expects the payment of approximately $600,000.00 from accounts receivable through the end of October 2015 and $2,000,000.00 each for November and December.

j. It has anticipated that the Debtor will produce approximately $560,000.00 in new receivables for production accomplished on and before the week ending October 24, 2015.

k. The Debtor owns a parcel of real property at 4230 Mobile Highway, Montgomery, Alabama and the property has a current value of approximately $500,000.00.

l. The Debtor is leasing additional parcels and warehouses in Montgomery, Alabama.

## Debtor's Accounts

10. The Debtor's secured debt structure, involving primarily the Senior Secured Lender, Renasant Bank, consists of:

   a. Note           -   $8,711.83 (unknown)

   b. Line of Credit -   $2,776,500.00 (cash collateral)

   c. Note           -   $934,940.90 (equipment)

   d. Note           -   $1,257,992.81 (equipment)

   e. Note           -   $42,571.45 (equipment)

   f. Note           -   $73,636.27 (equipment)

11. In addition, the Debtor also has the following secured claims with USAmeriBank:

   a. Note           -   $16,352.51 (equipment)

   b. Note           -   $856,021.98 (equipment)

   c. Note           -   $100,000.00 (equipment)

   d. Note           -   $39,560.14 (equipment)

   e. Note           -   $23,644.00 (equipment)

   f. Note           -   $52,552.06 (equipment)

12. Further, the Debtor has a number of secured claims by various lenders for vehicles and rolling stock.

13. It has been alleged that the Senior Secured Lender has a security interest in the Debtor's cash collateral, to wit: accounts receivable, inventory, and cash proceeds.

14. Although the Debtor has referenced the account above (paragraph 10(b)) as having a position in the Debtor's cash collateral, the Debtor is not stating a position as to the validity or perfection of Senior Secured Lender's secured status.

15. It is alleged that the Senior Secured Lender's cash collateral claim is estimated as

- 4 -
Case 15-32928    Doc 8    Filed 10/21/15    Entered 10/21/15 10:57:11    Desc Main
Document    Page 4 of 8

$2,785,211.83 and is secured by, among other things:

   a. accounts;

   b. chattel paper (whether tangible or electronic);

   c. deposit accounts;

   d. documents;

   e. general intangibles (including Payment Intangibles and Software);

   f. goods (including Inventory, Equipment and any accessions thereto); and,

   g. instruments.

## Use of Cash Collateral

16. Section 363(c)(2) of the Bankruptcy Code states that a debtor may not use, sell or lease cash collateral unless:

   a. each entity that has an interest in the cash collateral consents; or

   b. the court, after notice and hearing, authorizes such use in accordance with the provisions [of Section 363 of the Bankruptcy Code].

17. Cash collateral includes "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property…" 11 U.S.C. § 363(a).

18. 11 U.S.C. § 363 does not require that a creditor actually own the property for it to constitute cash collateral; "the section expressly defines cash collateral as property in which a creditor has an interest, including a valid security interest," *In re Foxcroft Square Co.*, 178 B.R. 659, 664 (E.D. Pa. 1995). A debtor's use of "a lender's cash collateral, absent adequate protection, would clearly cause a decrease in the value of that creditor's property in which the debtor had an interest, and would constitute an improper taking of the secured creditor's collateral." *In re 680*

*Fifth Avenue Associates*, 154 B.R. 38, 43 (Bankr. S.D.N.Y. 1993).

19. However, Debtor is required, in the ordinary course of business, to use its cash collateral to meet day to day expenses, payroll, royalties, and make supply purchases, and it is therefore vital to reorganization.

20. It is critical that the Debtor be allowed to make purchases of inventory and supplies to maintain its operations and revenues.

21. The Debtor's inability to pay employees, utilities, or operate in the normal course—for as little as one day—could easily result in the permanent shutdown of all facilities of the Debtor.

22. Debtor believes that it will not have the Senior Secured Lender's permission to use its cash collateral unless the Debtor agrees to pay adequate protection.

23. An Unsecured Creditor's Committee has not been appointed in this case. The Debtor will serve a copy of this motion on both senior and subordinated secured lenders; the holders of the twenty largest unsecured claims; the Bankruptcy Administrator; and all parties requesting notice.

24. Prior to the hearing on this matter, the Debtor will submit an operating budget and financial plan to the Court.

**Agreed Relief**

25. The Debtor and the Senior Secured Lender have agreed to a temporary order specifying the use of cash collateral for the week ending October 24, 2015.

26. The parties have agreed that the Debtor may use $400,000.00 of cash collateral for the week ending October 24, 2015. Funding will be $200,000.00 from the Debtor's operating account with Renasant Bank and $200,000.00 from the payment of accounts receivable, received by the Debtor and deposited in the Debtor in Possession account with Regions Bank. The Debtor

and the Senior Secured Lender have agreed to meet at the law office of Memory & Day on Monday, October 26, 2015, to discuss the temporary use of cash collateral until a final hearing.

27. The Debtor and the Senior Secured Lender reserve all rights and the instant agreement may not be held or used as an admission or position in any subsequent proceedings.

28. If the Parties cannot reach an agreement at the meeting on Monday, October 26, 2015, they will immediately notify the Court and request an expedited hearing.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully requests that this Honorable Court enter an order allowing Debtor's use of the Senior Secured Lender's cash collateral. Debtor also requests this Honorable Court hear this matter on an expedited basis. Debtor requests such other, further and different relief as to which it may be entitled.

Respectfully submitted on this the 21st day of October 2015.

*Memory & Day*

By: /S/ Von G. Memory

James L. Day
ASB-1256-A55J

Von G. Memory
ASB-8137-071V

Attorneys for Debtor

*Memory & Day*
Post Office Box 4054
Montgomery, Alabama 36103-4054
Tel (334) 834-8000
Fax (334) 834-8001
Email  vgm@memorylegal.com
       jlday@memorylegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date served a copy of the foregoing document on the following, by:

☒ placing same in the United States Mail, postage prepaid, and properly addressed

☒ E-mail or ECF (Pursuant to Fed. R. Bankr. P. 9036)

☐ facsimile

☐ hand delivery

☐ delivered in open court

on October 21, 2015.

U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104

/S/ Von G. Memory
James L. Day